Mr. Chief Justice Alvey
delivered the opinion of the Court:
The bill was filed by the appellants, The Security Investment Company, and McLachlen and White, trustees, against the appellee, David Garrett, for the purpose of fixing a lien upon the property of the latter and compelling him to refund to the plaintiffs the purchase money that had been paid by them for a portion of a lot of ground, No. n, in square No. 818, in the- city of Washington, purchased of Jane Garrett, and by her conveyed to McLachlen and White, trustees of the Investment Company. Jane Garrett, the party conveying the property to the trustees, died sometime before the filing of the bill, leaving two children, David Garrett and Mary E. Garrett, now Mary E. Kirkland, but the bill is filed against David Garrett alone.
*71 It appears that Jane Garrett was a colored woman, and was the daughter of Phoebe Lowe, who had been a slave in Maryland; and it was while Phoebe Lowe was living in a state of slavery that her daughter Jane was born. Phoebe Lowe came to Washington from Prince George’s county, in Maryland, and purchased the piece of ground in question, and it was conveyed to her by Nathaniel Brady, by deed dated 22d of October, 1841, according to the recital in the deed from Jane Garrett to the trustees. Phoebe Lowe died some years ago intestate, leaving her daughter, Jane Garrett, in the possession of the property.
The appellants, by their agents, Batchelder and Pike, both engaged in the business of land agents and real estate brokers, sought out and proposed to Jane Garrett the purchase [by them] of the piece of property that had belonged to Phoebe Lowe and was then in the possession of Jane Garrett, her daughter. The offer to purchase was made, and all the negotiations carried on to completion, with a full knowledge of the facts that Phoebe Lowe had been a slave, and that the daughter Jane was born in slavery; and they knew, moreover, according to their own sworn admissions, that the question as to the lawful marriage of Phoebe Lowe, and the legitimacy of her daughter Jane, had been canvassed, and had been made an objection, and the cause of breaking off a previous negotiation for the purchase of the property by another party. But, notwithstanding all this information, the plaintiffs, by their agents, proceeded with the negotiation to completion, getting the property at a price somewhat reduced from the price originally asked. They had the title examined and reported upon by a title insurance company, and in the certificate of title, that company certified that Jane Garrett was the only child and heir at law of Phoebe Lowe. A deed for the property was prepared in the office of one of the agents, of the plaintiffs, and in that deed it is recited that Jane Garrett, the grantor, was the only child and heir at law of Phoebe Lowe, deceased. The deed is dated the 21st of April, 1888, and contains covenants of special warranty and for further assurance.
*72 The bill alleges that the plaintiffs were induced to purchase the property from Jane Garrett by the representation of said Jane that she was the legitimate child and only heir at law of Phoebe Lowe which said representation was embodied in the deed executed by the said Jane, to which reference is made. It is also alleged that David Garrett, being the so”n and heir at law of Jane Garrett, as plaintiffs are informed, aided and assisted in the'consummation of the sale by his mother to the plaintiffs, and was well'aware of the fact that Jane Garrett represented herself to be the legitimate child and only heir at law of Phoebe Lowe, and was also well aware of the fact that it was solely upon the representation, and upon the belief by such representation created, that the plaintiffs were induced to consummate the purchase and pay their money thereon, and that David Garrett, as the plaintiffs believed, and so allege, knew at the time that the representations made by his mother were false and fraudulent, or could very easily have found out that such was the case; but that he stood by and permitted such fraudulent representations to be made, that he might reap the benefit of the sale when effected.
It is then alleged that the greater part of the purchase money, when paid by the plaintiffs, was turned over to said David Garrett; and that, with such proceeds of sale, he purchased and became seized of certain real property, in the city of Washington, described in the bill, which he still holds.
It is further alleged, that since the purchase of the lot from Jane Garrett, an action at law had been instituted against the plaintiffs, trustees, and a recovery had against them for six-twentieths of the property embraced in the deed from Jane Garrett; and that it was shown upon the trial of the action at lawl that the representations made by Jane Garrett, and acquiesced in by David Garrett, were utterly false; and finding the title to the property worthless, the plaintiff surrendered the same to the parties entitled thereto. The plaintiffs thereupon allege that they are advised, and so *73 claim, that they have a full right to follow the money applied by David Garrett and his mother, in the purchase of the property now vested in David Garrett, and to subject such property to the refunding of the purchase money to the plaintiffs. They allege and claim that David Garrett holds said property, acquired by him, as trustee for the use and benefit of the plaintiffs, to the extent of the money so received and applied in the purchase of said property.
The plaintiffs thereupon pray that the defendant be required, under octtli, to disclose where he obtained the money with which the property he now holds was purchased by him; and whether the same, or any part thereof, came to him from his mother, or was directly or indirectly derived from the sale of the property conveyed by Jane Garrett to the plaintiffs. They pray for an injunction to restrain the sale or disposition of the property of the defendant; for a declaration of trust in their fayor; and that the property now owned by David Garrett, acquired by the means aforesaid, be sold to reimburse the plaintiffs.
The defendant, David Garrett, filed under oath what is denominated a plea, but which is more properly an answer to the bill. In this he denies all fraud and misrepresentation charged in the bill, or that he had' any participation whatever in any act or negotiation affecting the purchase of the property, whereby the plaintiffs or their agents were deceived or misled in effecting the purchase. He alleges that he had advanced his mother more than $1,000 from his earnings, and hence the payment to him of the $1,000 out of the purchase money received for the property sold to the plaintiffs. He alleges that the plaintiffs and their agents were fully informed of the'nature and state of the title to the property sold by his mother; that the property was purchased by them, as he believes, as a speculation, at less than its market value, with expectation that if the title was not defective, or not contested or disturbed, or could be perfected, profit would result to the plaintiffs; and that this expectation not being realized, the false allegations set forth in the bill, *74 which are denied by the answer, were made whereby to wrongfully charge the defendant.
The record of the alleged recovery at law of part of the property does not appear to have been produced and placed in evidence; nor is it alleged what was the nature of the defense made to such action. The bill fails to allege to whom, and in what right the residue of the property was voluntarily surrendered upon claim without action for its recovery. Nor is it alleged, or shown in proof, upon what nature of claim of right or title the property was surrendered, or in what respect such title was superior and paramount to the rights of the party in actual possession, under claim of right and title. It is not shown by allegation or proof when Phoebe Lowe died, nor is the deed to Phoebe Lowe, made in 1841, exhibited in proof.
Issue was taken on the plea and answer, and there was a considerable amount of testimony taken from the agents and officers of the plaintiffs, and there was a great deal of examination, cross-examination and re-examination, but most of the testimony given was wholly irrelevant and inadmissible; much of it being proof of conversations and declarations of Mary Kirkland, the daughter of Jane Garrett, who was neither a party to the contract of sale and conveyance, nor a party to this suit; and therefore in no legal sense interested in a manner to make her declarations admissible as against the present defendant.
But with all the latitude of examination indulged in, there was not a particle of evidence elicited of any false and fraudulent representation by Jane Garrett as to the title of the property, or her right to inherit it, before the sale was completed; though in the deed, prepared in the office of one of the agents of the plaintiffs, it is stated, by way of recital, that Jane Garrett was the only child and heir at law of Phoebe Lowe. Nor is there any evidence to show that David Garrett, the defendant, made any false and fraudulent representations as to the title, or as to his mother’s legitimacy that should, in any respect, have deceived or misled the agents *75 of the plaintiffs. Mr. Batchelder, the secretary and treasurer of the plaintiff company, and who seems to have been active in conducting the negotiation and bringing about the sale, says he never met Jane Garrett; and in answer to the question put to him by the plaintiffs’ counsel, as to an interview had with David Garrett, in which the legitimacy of his mother was referred to, the witness said: “I told him, as I stated, that the whole thing hinged on her (the mother) being able to convey a good title, and if she was, as stated in the deed which he had had recorded, and as stated by her, the legal heir and sole child of Phoebe Lowe, and the Columbia Title Company reported a good title, the sale would be closed, but otherwise it would not. The impression that I was given was that everything would be found to be all right.”
In another part of his testimony, the witness, in reply to a question as to whether he had made any report to his board of directors on the subject of the title, said: “I reported the report of the title at that time. We purchased only upon the report of the Columbia Title Company, which company reported a good title. That settled it, and it did not require any report from me.”
Now, when we come to examine the evidence, we find an entire absence of any proof to show that the title company had sought information from Jane Garrett, or from David Garrett, or any of the family; but that company certified the title to be good, and that Jane Garrett was the sole child and heir of Phoebe Lowe; and it was upon that report that the plaintiffs concluded the purchase. And in another part of the testimony of the same witness, in answer to a question as to what reference had been made to the marriage of Jane Garrett, he said: “I did not raise any question of marriage with David Garrett. I was given to understand, and got the impression from the sister, that the mother was a slave, and that this child (Jane Garrett) was bom in slavery and came to Washington with her.” He also states that the name of the person to whom Phoebe Lowe belonged as a slave was mentioned in these conversations.
*76 It may be conceded, if it were clearly and satisfactorily shown that David Garrett had been instrumental in causing the contract of purchase to be made by the plaintiffs, by means of false and fraudulent representations, upon which the plaintiffs relied and acted, and that he received the purchase money, or part of it, and invested it in the purchase of property in his own name, that, in such case, the money so received and invested could be followed and sequestered to reimburse the plaintiffs for the money paid for a worthless title imposed upon them by such means. But that could be done only in case of actual fraud clearly established. Actual fraud or fraud in fact can never be presumed, but must always be proved by the party who alleges it; and if the motive and design of an act may be traced to an honest and legitimate source equally as to a corrupt one, the former ought to be preferred. And though a representation made by a party sought to be charged was at the time untrue, yet if the party was ignorant of it, and, so far as appears from the evidence, believed that it was true, he is not responsible for the loss sustained by the other party in trusting to such representation. The misrepresentation may be either positive or negative; it may consist as much in the suppression of what is true as in the assertion of what is false; but it must clearly appear that the misrepresentation was fraudulently made, and that the party deceived entered into the contract on the , faith of the representation. In other words, that the representation gave occasion to the contract, and that, in the absence of such representation, the contract would not have been made.
The evidence in this case does not warrant any such conclusion. The plaintiffs, in accepting the title, relied not upon any representation of Jane Garrett or of David Garrett, but upon the certificate of title furnished by the title insurance company. This is shown not only by the evidence of the secretary, Batchelder, but by the certificate of title furnished by that company, and substantially incorporated in the deed prepared by the agents of the plaintiffs and executed by Jane Garrett.
*77 But if this were out of the case, the circumstances disclosed would be wholly insufficient to vacate the contract of purchase, or to render liable for false representations either Jane Garrett or David Garrett. What these colored people, the descendants of slaves, may have understood in regard to the marriage of Phoebe Lowe, may be easily conjectured. They were not questioned whether a marriage took place in church or before a minister of the gospel, or as to what ceremony, if any, took place. The facts of marriage and birth of children would most likely be spoken of by them with a significance that grew out of the habits and customs of the race when in a state of slavery; and when they talked of or referred to the fact of marriage, they meant simply the es-pousals or personal contract between the parties to become husband and wife. It was seldom that any ceremony more formal than that was observed; and it has not yet been decided, by any court of authority, so far as we are aware, that such marriages among that race are not valid at the common law. Hence, when people of that race speak of the legitimacy of their children born in slavery, they most generally have reference to the habits and customs that prevailed among them, and speak with no untruthfulness in referring to their marriages as lawful and their children as born in wedlock. And if that be the sense in which the alleged representations were used, clearly there was nothing false or fraudulent in them.
But in this case, even supposing that there were false representations, the agents and officers of the plaintiff were possessed of ample information to put them upon inquiry as to the real facts of the case. It appears they made no inquiry whatever, such as would have given them full information upon the subject. It is laid down in the books that notice may be either actual or constructive; but for most purposes there is no real difference between the different species of notice as to their effects upon transactions between parties. Constructive or implied notice affects a transaction in the same manner that actual notice will affect it. In that case the *78 agents of the plaintiff, who have testified, all admit that they knew, before the purchase was completed, that Phoebe Lowe had been a slave and that Jane Garrett was born in slavery; and they further admit that they knew it had been made a question whether Jane Garrett had been born in lawful wedlock. Now, it is a settled principle that notice to an agent or attorney of the purchaser, employed in any part of the transaction, is notice to the purchaser, although it may be clear that the fact was not communicated to him; and that, too, although the importance of the fact may not have been understood by the agent. And so, if an agent be employed, as is sometimes the case, by both parties, he may have received, as agent for the one, what it becomes his duty to make known to the other, and the purchaser, by adopting the contract made by the agent, takes the contract subject to all the consequences of notice to the agent who made. it. The-principle of constructive or implied notice is very fully and clearly expounded by the Supreme Court of the United States, in the case of Simmons Creek Coal Co. v. Doran, 142 U. S., 417, 437, in an opinion delivered by Mr. Chief Justice Fuller. In that opinion, adopting the exposition of the principle by the Court of Appeals of Virginia, in the case of Burwell's Admr. v. Fauber, 21 Gratt., 446, 463, it is declared that “purchasers are bound to use a due degree of caution in making their purchases, or they will not be entitled to protection. Caveat emptor is one of the best settled maxims of the law, and applies exclusively to a purchaser. He must take care, and make due inquiries, or he may not be a bona fide purchaser. He is bound not only by actual but also by constructive notice, which is the same in its effect as actual notice. He must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, or to the knowledge of which anything there appearing will conduct him. He has no right to shut his eyes or his ears to the inlet of information, and then say he is a bona fide purchaser without notice.”
With the suggestive knowledge that the agents possessed *79 as to the right of Jane Garrett to inherit the property from her mother, instead of making the proper inquiries in regard to the fact, the plaintiffs relied upon the certificate of the title company, and the deed with a special covenant that the grantors would warrant and defend the property conveyed, against the claims of all persons claiming or to claim the same, or any part thereof, by, from, under or through the party grantor; and covenant for further assurance. As we have said, the proof fails to show fraud on the part of either Jane Garrett or David Garrett, by which the plaintiffs were induced to enter into the contract of purchase. And that being so, it is a settled principle that a vendor, selling in good faith, is not responsible for the goodness of the title, beyond the extent of the covenants in his deed. Abbott v. Allen, 2 John. Ch., 523; Gouverneur v. Elmendorf, 5 John. Ch., 79. But even upon the theory of the plaintiffs’ bill, in order to make ground for a right to recover against David Garrett, it would be necessary to establish the fact, by clear proof, of the illegitimacy of Jane Garrett, and that her title to the property sold to the plaintiffs was wholly indefensible; and that the plaintiffs had been evicted therefrom by a title paramount, lawfully asserted; and in addition to this, it would be necessary to establish beyond reasonable doubt, that the sale had been effected to the plaintiffs by the false and fraudulent representations of the defendant, and that the latter had the money, received on the fraudulent sale, invested within the reach of the court. But, as we have shown, the plaintiffs have wholly failed to make out such case.
It follows that the decree below dismissing the bill must be affirmed; and it is so ordered, with costs to the appellee.

Decree affirmed.